**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────
GJAMILA WILLIAMS, o/b/o J.J., a minor,

                              Plaintiff,

         - v -                                    Civ. No. 5:09-CV-1092
                                                                         (RFT)
MICHAEL J. ASTRUE, Commissioner of Social
Security,

                              Defendant.
─────────────────────────────────────────

**APPEARANCES:**                                   **OF COUNSEL:**

OLINSKY LAW GROUP                       JAYA A. SHURTLIFF, ESQ.
Attorney for Plaintiff                             KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION    MICHELLE L. CHRIST, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**[1]

      In this action, Plaintiff Gjamila Williams, on behalf of her son, J.J., a minor, moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her son's application for Supplemental Security Income (SSI).[2] Based upon the following discussion, this Court upholds the Commissioner's decision denying Social Security benefits.

---

     [1] On December 2, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 21.

     [2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 14 & 18.

## I. BACKGROUND

### A. Facts

J.J., born on April 27, 1995, was eleven years old at the time an application for SSI was protectively filed on his behalf. Dkt. No. 7, Admin. Tr. [hereinafter "Tr."] at p. 72. The Court adopts the facts as set forth by the Plaintiff in her Brief under the heading "STATEMENT OF FACTS" with the exception of any conclusions or inferences included thereto. Dkt. No. 14, Pl.'s Br., at pp. 2-10.

In January 2004, J.J. damaged his left eye while playing. Following this incident, it was determined that J.J. suffered a ruptured globe and he underwent an operation to repair a corneal laceration on his left eye. Tr. at pp. 151-54. Another operation followed a few months later. *Id*. J.J. wears prescription glasses and a contact lens. In July of that same year, J.J. was shot outside his home, resulting in several operations to retrieve bullet fragments in his lower abdomen and later to alleviate bowel obstructions. *Id*. at pp. 217-62 & 267-83. As a result of these two events, J.J. alleges a disability due to the following: "status post gunshot wound to the abdomen and right leg with ongoing intermittent small bowel obstruction and right leg nerve damage . . .; status post ruptured globe repair with ongoing impaired vision . . .; 'developmental delay' . . .; and Adjustment Disorder with Mixed Anxiety and Depressed Mood . . . ." Pl.'s Br. at p. 2.

### B. Procedural History

October 28, 2006, Gjamila Williams, on behalf of her minor son, protectively filed for SSI benefits alleging a disability onset date of January 25, 2004. Tr. at pp. 72-75 & 88. The application was denied initially. *Id.* at pp. 52 & 53-57. On October 14, 2008, a Hearing was held before Administrative Law Judge (ALJ) F. Patrick Flanagan, and on December 31, 2008, the ALJ issued an unfavorable decision finding J.J. was not entitled to benefits. *Id.* at pp. 5-25; Dkt. No. 12, Supp.

Admin. Tr. [hereinafter "Supp. Tr.] at pp. 320-52.  On September 10, 2009, the Appeals Council concluded that there was no basis under the Regulations to grant Plaintiff's and her son's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  Tr. at pp. 1-4.  Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

In this appeal, this Court must determine whether the ALJ applied the correct legal principles and whether substantial evidence supports the Commissioner's decision that J.J. was not disabled from October 18, 2006, the SSI application date, through December 31, 2008, the date of the ALJ's decision.[3]

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams*

---

[3] SSI benefits cannot be paid any earlier than the month after the month in which the application is filed. 42 U.S.C. § 1382(c)(7);  20 C.F.R. § 416.501.

*ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, which modified the standards for determining whether a child is eligible for SSI disability beneftis. *See* Pub. L. No. 104-193, 110 Stat. 2105 (1996) (codified as amended, 42 U.S.C. § 1305 *et seq*). To qualify for disability benefits under the Act, an individual

> under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The Act does not require that the severity of a child's impairment be of comparable severity to that of a disabled adult. In order to determine if a child is disabled, the ALJ must proceed with a three-step analysis. *See* 20 C.F.R. § 416.924(a). The first step requires the ALJ to consider whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *Id.* If the child is not engaged in substantial gainful activity, the ALJ next considers the child's physical and mental impairments to determine whether they are severe. 20 C.F.R. § 416.924(c). If there is no medically determinable impairment or if there is only a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will not be considered disabled. *Id.* If a severe impairment is found, the ALJ must consider whether the impairment meets or is medically or functionally equal in severity to a listed

impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *See* 20 C.F.R. §§ 416.924(c) & (d).

### C.  ALJ Flanagan's Findings

Gjamila Williams and J.J. testified at the Hearing before ALJ Flanagan.  Supp. Tr. at pp. 320-52. In addition to such testimony, the ALJ had J.J.'s school records, including two Teacher Questionnaires, as well as medical records, consisting of treatment reports and opinions from various treating and/or examining physicians, including, but not limited to (1) Deborah A. Doyle, School Writing Instructor; (2) Amy M. Johnson, School Health Teacher; (3) Crouse Hospital Emergency and Inpatient Records; (4) Myra Shayevitz, M.D., Agency Pediatric Physical Examiner; (5) University Center for Vision Care Outpatient Hospital Records; (6) R. Mohanty, M.D., Agency Psychiatrist; (7) Hutchings Psychiatric Center Outpatient Hospital Records; (8) University Hospital Outpatient Records; (9) George Starr, M.D., Treating Pediatrician; and (10) Claudette McGowan-Wells, CSW, Psychiatric Social Worker. *See generally* Tr. at pp. 76-140 & 151-319.

Using the three-step disability evaluation, ALJ Flanagan found that: (1) J.J. had not engaged in any substantial gainful activity at any time relevant to his decision; (2) he has severe, medically determinable impairments or combination of impairments, namely reduced visual acuity in his left eye, gunshot wound to his abdomen with bowel obstructions, exploratory laparatomy and lysis of adhesions, and adjustment disorder with mixed anxiety and depressed mood; and (3) his severe impairments do not meet, medically equal, nor functionally equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4, and, therefore, J.J. is not disabled.  *Id.* at pp. 5-25.

### D.  Plaintiff's Contentions

On Appeal, Plaintiff contends that the ALJ made several errors in his decision thereby warranting a reversal and remand solely for the calculation of benefits.  Specifically, Plaintiff contends

the ALJ erred when he: (1) found that J.J.'s leg pain, muscle spasms, and nerve damage caused by the gun shot wound, and developmental delay were not severe; (2) improperly applied the treating physician rule and failed to fully develop the record; and (3) found that J.J.'s impairments did not functionally equal the Listings.  Dkt. No. 14.

1. Step Two – Severe Impairments

In determining at Step Two the severity of J.J.'s impairments, the ALJ found that J.J.'s "reduced visual acuity in his left eye, gunshot wound to his abdomen with severe bowel obstructions, exploratory laparatomy and lysis of adhesions, and adjustment disorder with mixed anxiety and depressed mood" were severe "because they constitute more than slight abnormalities that cause more than minimal functional limitations."  Tr. at p. 12.  However, the ALJ found that there was "insufficient medical evidence showing that [J.J.]'s alleged pain in his right leg, muscle spasms, and nerve damage are more than slight abnormalities that cause him to have more than minimal functional limitations" and are therefore considered non-severe impairments.  *Id.*  Further, the ALJ noted that Dr. Starr's diagnosis that J.J. had developmental delays and seizures was unsupported by the medical evidence and Teacher Questionnaires, and thus, are considered non-severe impairments.  *Id.*

With regard to Plaintiff's allegations concerning his leg, we find that substantial evidence supports the ALJ's finding that such impairments are not severe.  A severe impairment is an abnormality "that causes no more than minimal functional limitations."  20 C.F.R. § 416.924(c).  As noted by the Commissioner, the medical evidence cited by the Plaintiff dates back to 2004, which is two years prior to the relevant time period.  There is no objective medical evidence to support Plaintiff's contention that his leg impairments were severe during the relevant time frame.  Plaintiff points to the consultive physical examination performed by Myra Shayevitz, M.D., as supporting the

notion that J.J. has more than minimal limitations due to his right leg pain. Pl.'s Br. at p. 14. However, Dr. Shayevitz found that J.J. had no trouble getting on and off the exam table and that while he was "slightly unsteady and wide based walking on his heels," his gait was deemed normal for his age. Tr. at p. 178. Also, while there was a slight discrepancy between his left and right calf muscle mass, his extremities were deemed to be within normal limits, muscle tone was deemed normal for his age, and he had normal five out of five motor strength in his lower extremities. *Id*. at p. 179. Dr. Shayevitz also determined there were no neurologic abnormalities in his lower extremities. *Id*.

Furthermore, during the Hearing, Ms. Williams merely testified, without elaboration, that J.J. feels discomfort in his right leg as a result of a nerve injury suffered from the shooting incident in July 2004. Supp. Tr. at p. 328. She further testified that the limitations placed upon him with regard to playing sports was due to his eye injury and the stomach problems. *Id*. at p. 333. Upon questioning, J.J. admitted that he while he is not allowed to play any team sports, he nevertheless plays with his friends in the park, including two-hand touch football, basketball, riding bikes, walking dogs, and swimming. *Id*. at pp. 338-39. J.J. further testified that if he walks around too much on his leg he feels pain in his leg; to alleviate this pain, he simply sits down for a couple of minutes, which helps the pain go away. *Id*. at pp. 340-41. In light of the absence of objective medical evidence establishing the severity of the leg pain, coupled with the testimony during the Hearing, we find that the ALJ did not err when he found that J.J.'s leg complaints did not amount to a severe impairment.

2. Step Two – Treating Physician and Development of the Record

Next, Plaintiff contends that the ALJ erred when he found that J.J.'s "developmental delays" did not constitute a severe impairment and that in making this assessment, the ALJ erroneously discounted J.J.'s treating physician's diagnosis and failed to properly develop the record. Pl.'s Br. at

pp. 14-16 & 20-22.

The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Ordinarily, a treating physician's opinion is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(d)(2); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998). Such opinions are not controlling, however, if contradicted by other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d at 588. Where conflicts arise in the medical evidence, resolution of such is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d at 588 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

The record contains two Medical Source Statements, one dated September 26, 2007, and the other dated October 21, 2008, from J.J.'s treating pediatrician, Dr. George Starr. Tr. at pp. 263-66 & 312-15. Both Statements reflect a diagnosis of developmental delays, seizures, blind left eye, and gun shot. *Id*. The ALJ determined, however, that the diagnosis of developmental delays was not supported by the medical evidence in the record nor by the questionnaires completed by J.J.'s teachers. *Id*. at p. 12. The subject Teacher Questionnaires are those completed by Deborah Doyle, Sixth Grade Writing Instructor, on November 25, 2006, and by Amy Johnson, Seventh Grade Health/Homeroom Teacher, on October 9, 2007. *Id*. at pp. 106-13 & 128-36. While assessing J.J.'s limitations in several areas,

neither teacher attributed such limitation to any developmental delay. Neither teacher found that behavior modification strategies were warranted and there has been no suggestion that J.J. be deemed an inclusion student.[4] Furthermore, when the Questionnaires are read in succession, it is clear that J.J. improved from sixth grade to seventh grade in many areas and, as noted by his seventh grade teacher, J.J.'s need to be constantly reminded to stay on task is a common problem among his peers. Because Dr. Starr's diagnosis was not supported by the medical record, we find that the ALJ did not err when he disregarded such assessment and deemed J.J.'s developmental delays to be not severe.

Finally, we disagree with Plaintiff's argument that the ALJ failed to properly develop the record with regard to developmental delays. Plaintiff is correct that the ALJ must affirmatively develop the record even when the claimant is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); 20 C.F.R. § 416.912(d). However, we find that ALJ Flanagan satisfied this duty and was under no obligation to re-contact any provider for further information or clarification. Under the Regulations, the ALJ is obligated to re-contact a medical source when the evidence received is "inadequate" to make a determination. 20 C.F.R. § 416.912(e). Here, there was no gap in the record nor an inadequate record which would have inhibited the ALJ from making a determination. To the contrary, the record was vast and complete including medical records from surgical procedures, consultive examinations, psychiatric reports, treating records, education records, and teacher evaluations. *See* Tr. at pp. 76-319. Thus, the ALJ was under no obligation to re-contact Dr. Starr, who, incidentally, had already provided all of the relevant treating medical records and also provided two Medical Source Statements. *See* Tr. at pp. 263-66 & 312-15; *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d at 48, for the proposition that "where there are no obvious gaps in the administrative record, and

---

[4] Ms. Johnson indicated in her Questionnaire that while he is not an inclusion student, he is in an inclusion class so there are extra supports in the classroom. Tr. at p. 130.

where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim").

It is worth noting that while the ALJ determined several of J.J.'s impairments to be not severe, he nevertheless, consistent with the Regulations, considered the impact of these non-severe impairments throughout the rest of the disability evaluation. Tr. at pp. 12-16; 20 C.F.R. § 416.923. Because we find that the ALJ made no errors at Step Two, we proceed to consider Plaintiff's remaining arguments.

### 3. Step Three – Functional Equivalence

At Step Three, it must be determined a claimant's impairments meet or is medically or functionally equal to a disability listed in the "Listing of Impairments" set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos v. Barnhart*, 2003 WL 21032012, at *8.

In determining whether an impairment is functionally equivalent to a listed impairment, the ALJ must assess the child's developmental capacity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). If the child has marked limitations in two domains or an extreme limitation in one domain, then the child's impairment is functionally equivalent to a disability in the Listings. 20 C.F.R. § 416.926a(d).

Plaintiff challenges the ALJ's assessment that J.J. had "less than marked" limitations in all six

domains of childhood functioning. Plaintiff claims that the evidence supports a finding of "marked limitations" in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) moving about and manipulating objects; and (4) health and physical well-being.

Under the Regulations, a marked limitation generally means that a child's

> impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The claimant's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

An extreme limitation is generally found when the child's

> impairment(s) interferes very seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The] day-to-day functioning may be very seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked". . . . [but] does not necessarily mean a total lack or loss of ability to function.

20 C.F.R. § 416.926a(e)(3)(i).

In rendering the functional assessment, the ALJ considered the testimony of J.J. and his mother; the opinions of Dr. Pan, Dr. Starr, Dr. Shayevitz, Dr. Mohanty, Social Worker McGowan-Wells; and the two Teacher Questionnaires. Tr. at pp. 14-16. In summary, the ALJ made the following findings for each domain:

> (1) acquiring and using information — less than marked limitation in function;
>
> (2) attending and completing tasks — less than marked limitation in function;
>
> (3) interacting and relating with others — less than marked limitation in function;
>
> (4) moving about and manipulating objects — less than marked limitation in function;
>
> (5) caring for yourself — less than marked limitation in function; and
>
> (6) health and physical well-being — less than marked limitation in function.

*Id*. at pp. 13-24.

In reviewing each of the six domains, the ALJ noted that Dr. Starr and Jane Pan, M.D., resident in opthamology, each opined that J.J. was disabled. *Id*. at p. 14; *see also* Tr. at pp. 181-200 & 312-15. Dr. Pan stated on December 7, 2006, that she expected J.J. to have "permanent disability from [his] rupture[d] globe." *Id*. at p. 14 (quoting Tr. at p. 182). Dr. Starr evaluated J.J. on October 21, 2008, and stated that he had a marked loss in his ability to move at an efficient pace at school, home, and neighborhood, and a marked loss in his ability to understand what is right and wrong and what is acceptable and unacceptable behavior. *Id*. (citing Tr. at p. 314). The ALJ then indicated that Drs. Pan's and Starr's medical opinions were given little weight, as opposed to controlling weight, because he deemed them to be "inconsistent with the claimant's longitudinal medical record and the testimony provided by the claimant and his mother." *Id*.

The ALJ further considered the other opinions included in the record and explained the respective weight he accorded to each. With regard to the opinions rendered by Dr. Shayevitz, state agency consulting examiner, the ALJ gave some weight to the extent that Dr. Shayevitz found that J.J. would need additional surgeries and assistive devices to deal with his impairments. *Id*. at p. 15. Considerable weight was given to the opinion of Dr. Mohanty, state agency program psychiatrist, who found that J.J. had less than marked limitations in four out of six functional domains and no limitations in the remaining two.[5] *Id*. (citing Tr. at pp. 201-06). The ALJ found that Dr. Mohanty's opinions were consistent with the medical evidence and with the testimony procured at the Hearing. *Id*. Considerable weight was given to the opinions of the teachers, whom, according to the ALJ, "frequently interact with and observe [J.J.] in an educations setting." *Id*. at p. 16. Ultimately, Ms. Johnson's assessment was

---

[5] Specifically, Dr. Mohanty found that J.J. had less than marked limitations in acquiring and using information; attending and completing tasks; moving and manipulating objects; and health and physical well-being. Tr. at pp. 203-04. Dr. Mohanty found that J.J. had no limitations in interacting and relating with others and caring for yourself. *Id*.

given more weight as it was more recent and appeared "more consistent with the evidence showing that [J.J.] is in regular classes and that his inability to stay on task is a common issue among his peers." *Id*. Lastly, the ALJ gave some weight to the findings of Ms. McGowan-Wells, as social worker, who is considered a non-medical source.

Upon reviewing the entire record, the ALJ found that the assessments were consistent with each other in terms of identifying some limitations to J.J.'s functional domains. Overall, the ALJ determined that J.J.'s reduced visual actuity in his left eye, gunshot wound to his abdomen with severe bowel obstructions, exploratory laparatomy and lysis of adhesions, and adjustment disorder with mixed anxiety and depressed mood caused less than marked limitations in all six of the functional domains. A brief summary of each functional domain challenged by the Plaintiff follows.

*a. Acquiring and Using Information*

The domain "acquiring and using information" addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The ALJ stated that J.J. had less than a marked limitation in function in this category, and that this finding is supported by the opinions of Ms. Doyle, Ms. Johnson, and Dr. Mohanty. Tr. at p. 17. As the ALJ noted, J.J. was in "regular education classes and has an above average grade point average, and neither goes to any special education classes nor does he have an individualized education plan." *Id*. Furthermore, as the ALJ noted, the Teacher Questionnaires showed significant improvement in this area. For example, Ms. Doyle identified three areas wherein J.J. exhibited a "serious problem:" (1) reading and comprehending written material; (2) expressing ideas in written form; and (3) recalling and applying previously learned material. Tr. at p. 107. However, the following year, Ms. Johnson's assessment of only "an obvious problem" in each of these areas highlights an improvement. *Id*. at p. 129. Similarly, whereas Ms.

Doyle found that J.J. had obvious problems in (1) understanding school and content vocabulary; (2) providing organized oral explanations and adequate descriptions; and (3) applying problem-solving skills in class discussions, Ms. Johnson found that J.J. only exhibited slight problems in these areas the following year. *Id*. at pp. 107 & 129. Based on the record, the ALJ's statement that J.J. had less than a marked limitation in function in this category is supported by substantial evidence.

### *b. Attending and Completing Tasks*

The second domain, attending and completing tasks, involves an analysis of how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). It also refers to how well a child begins, carries through, and finishes activities, including the pace at which he performs activities and his ease in changing activities. *Id*. In this domain, the ALJ noted less than marked limitation. Tr. at pp. 18-19. Based upon the record, the ALJ's assessment of this category is supported by substantial evidence.

As with the previous domain, the Teacher Questionnaires reveals significant improvement in J.J.'s behavior from sixth grade to seventh grade. *Id*. at pp. 108 & 130. For example, Ms. Doyle found that J.J. had a serious problem carrying out multi-step instructions, but the following year, Ms. Johnson found he exhibited only a slight problem. *Id*. J.J. showed improvement in several other activities such as organizing his own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time.[6] *Id*. The latter activity in particular was noted by Ms. Doyle to be a serious problem, and she commented

---

[6] Ms. Doyle found that J.J. exhibited an obvious problem in organizing his own things or school materials; Ms. Johnson noted this was only a slight problem. Tr. at pp. 108 & 130. Ms. Doyle found that J.J. exhibited a serious problem in completing class/homework assignments; Ms. Johnson found this was an obvious problem. *Id*. Ms. Doyle found J.J had an obvious problem with completing work accurately without careless mistakes; Ms. Johnson found J.J. only had a slight problem with this activity. *Id*. Finally, Ms. Doyle found that J.J had a serious problem working at a reasonable pace/finishing on time; Ms. Johnson found this only to be a slight problem. *Id*.

that his pace was very slow, yet, Ms. Johnson deemed this to be only a slight problem. *Id.* While there were several areas to which J.J. showed no improvement from the prior year, such as focusing long enough to finish assigned activity or task or refocusing to task when necessary, Ms. Johnson commented that these are common problems for people his age. *Id.* This assessment is mirrored by Dr. Shayevitz's observation that J.J. "appeared to have [a] normal attention span for [his] age." *Id.* at p. 178. Finally, as the ALJ noted, J.J.'s academic progress does not appear to have suffered because of his limitations and there is no indication that he was ever evaluated for attention deficit hyperactivity disorder. *Id.* at p. 19.

### *c. Moving About and Manipulating Objects*

In this domain, the ALJ evaluates how well a child moves his or her body and other objects, also referred to as gross and fine motor skills. 20 C.F.R. § 416.926a(j). The ALJ found that J.J. had less than marked limitations in this domain, which is supported by substantial evidence in the record.

Because of his abdominal condition and vision problems, J.J. is not permitted to participate in contact sports. However, he is not limited in his ability to enjoy physical activities nor use fine motor skills. The medical record and testimony supports this analysis. Although Dr. Starr noted that J.J. has marked loss in his ability to move at an efficient pace at school, home, and neighborhood, he clarified this assessment by noting that it "can vary." Tr. at p. 314. And despite the limitation imposed that J.J. not participate in contact sports, Dr. Starr found no or mild loss in J.J.'s ability to enjoy a variety of physical activities, such as running, jumping, throwing, kicking, catching, and hitting balls. *Id.* Dr. Starr further found no or mild loss in J.J.'s ability to use household tools independently, such as scissors and writing utensils. Dr. Shayvitz observed that J.J. had no problem getting on and off the exam table and, despite a slightly unsteady and wide based walking while on his heels, his gait was normal for his

age. *Id*. at p. 178. Dr. Shayvitz also found that J.J.'s fine motor activity of his hands were age appropriate; he could handle large and small objects in an age appropriate way; and could pick up and manipulate a small object, write with a pen, tie a bow, button a small button, open a small cap, zip a zipper, and use velcro. *Id*. at p. 179. Ms. Doyle noted that J.J. has an obvious problem moving and manipulating things, noting that he has a hard time seeing, but Ms. Johnson noted the following year that J.J. had no problems observed in this domain. *Id*. at pp. 110 & 133. Lastly, at the Hearing, J.J. testified that despite the restrictions placed upon him, he plays basketball, two-hand touch football, rides his bicycle, walks dogs, plays Nintendo Wii, and swims. Supp. Tr. at pp. 337-39.

*d. Health and Physical Well-being*

In this domain, health and physical well-being, the ALJ considers the cumulative physical effects of medical or psychiatric conditions and the effects of associated treatment or therapies on a child's functioning that were not previously considered in the domain evaluating the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l). The ALJ's finding that there was less than a marked functional limitation in this domain because he "does not have a chronic health problem that requires frequent visits to the emergency room" is supported by the evidence in the record. Tr. at p. 24.

As the ALJ noted, J.J.'s primary limitation in this domain is his problem seeing. However, the record shows that J.J. does not make frequent trips to the eye doctor, and instead, only goes on an annual basis. J.J. also wears corrective lenses, which his mother testified he does not always wear, and does not seem to have any problems functioning adequately at home and at school. Supp. Tr. at pp. 239-30. With regard to his abdominal problems, the testimony provided by J.J.'s mother indicates that J.J. can take steps to avoid abdominal pain by adjusting his diet and that when he experiences pain, it

is treated with over-the-counter medication, none of which cause him any side effects. *Id*. at pp. 328 & 342. Lastly, J.J.'s anxiety/depression is not treated with any medication, and both J.J. and his mother attend regular therapy sessions, which have resulted in improved behavior at school and home. *Id*. at pp. 332-33.

### III. CONCLUSION

The Court has considered all of the Plaintiff's arguments in support of remand and find them to be unavailing. In light of the foregoing discussion, it is clear that in finding J.J. was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence. Thus, this Court finds that such decision should be upheld.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: March 8, 2012
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge